UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60147-CR-HURLEY

UNITED STATES OF AMERICA,

v.

AARON DOMINICK BARR,

Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and Aaron Dominick Barr ("Defendant") enter into the following agreement:

1.     Defendant understands that he has the right to have the evidence and charges against him presented to a federal grand jury for determination of whether or not there is probable cause to believe he committed the offense for which he is charged.   Understanding that right, and after full and complete consultation with his counsel, Defendant agrees to waive in open court his right to prosecution by indictment and agrees that this Office may proceed by way of an information filed pursuant to Rule 7 of the Federal Rules of Criminal Procedure.

2.     Defendant agrees to plead guilty to counts 1 and 2 of the information, which counts charges Defendant with the use unauthorized access devices, in violation of Title 18, United States Code, Section 1029(a)(2), and aggravated identity theft, in violation of Title 18, United States Code, Section 1028A(a)(1).

3.     This Office will not seek dismissal of any counts after sentencing.

4.     Defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (the "Sentencing Guidelines").

Defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.   Defendant is also aware that, under certain circumstances, the Court may depart from the advisory Sentencing Guidelines range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.   Defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines advisory range.   Knowing these facts, Defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph 2 and that Defendant may not withdraw the plea solely as a result of the sentence imposed.

5.      Defendant also understands and acknowledges that, as to Count 1, the Court may impose a statutory maximum term of imprisonment of up to ten years, followed by a term of supervised release of up to three years.   In addition, as to Count 2, the Court must impose a statutory minimum term of two years of imprisonment, which is to run consecutive to any other term of imprisonment, and may impose a term of supervised release of up to one year.   In addition to terms of imprisonment and supervised release, the Court may impose a fine of up to $250,000 and must order restitution.

6.    Defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 5 of this agreement, a special assessment in the amount of $200 will be imposed on Defendant.   Defendant agrees that any special assessment imposed shall be paid at the time of sentencing.   If Defendant is financially unable to pay the special assessment, Defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for Defendant's failure to pay.

7.    This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning Defendant and Defendant's background.   Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

8.    This Office agrees that it will recommend at sentencing that the Court reduce by two levels the Sentencing Guidelines level applicable to Defendant's offense, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon Defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing Defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that Defendant has assisted authorities in the investigation or prosecution of Defendant's own misconduct by timely notifying authorities of Defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.   This Office, however, will not be required to make this motion and

3

these recommendations if Defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

9.     This Office and Defendant agree that, although not binding on the probation office or the Court, they will jointly recommend that the Court make the following findings and conclusions as to the sentence to be imposed:

   a.   <u>Count 1 Base Offense Level</u>:   The relevant base offense level under Section 2B1.1(a)(2) of the Sentencing Guidelines as to count 1 is Level 6.

   b.   <u>Count 1 Loss Amount</u>:   The relevant amount of actual, probable or intended loss resulting from the offense committed by Defendant as to count 1, under Section 2B1.1(b)(1) and Application Note 3(F)(i) to Section 2B1.1(b)(1), is $479,219.

   c.   The restitution amount applicable to this case is $28,493.

10.    Defendant is aware that the sentence has not yet been determined by the Court. Defendant also is aware that any estimate of the probable sentencing range or sentence that Defendant may receive, whether that estimate comes from Defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. Defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety.   Defendant

4

understands and acknowledges, as previously acknowledged in paragraph 4 above, that Defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by Defendant, this Office, or a recommendation made jointly by Defendant and this Office.

11.   Defendant also agrees to assist this Office in all proceedings, whether administrative or judicial, involving the forfeiture to the United States of all rights, title, and interest, regardless of their nature or form, in all assets, including real and personal property, cash and other monetary instruments, wherever located, which Defendant or others to Defendant's knowledge have accumulated as a result of illegal activities.   Such assistance will involve Defendant's agreement to the entry of an order enjoining the transfer or encumbrance of assets that may be identified as being subject to forfeiture.   Additionally, Defendant agrees to identify as being subject to forfeiture all such assets, and to assist in the transfer of such property to the United States by delivery to this Office upon this Office's request, all necessary and appropriate documentation with respect to said assets, including consents to forfeiture, quit claim deeds and any and all other documents necessary to deliver good and marketable title to said property. Specifically, Defendant agrees to forfeit all right, title, and interest in the electronic devices and other items that were seized from his residence located at 2641 SW 83 Ave, Miramar, Florida 33025, on March 3, 2015, including:

   a)   Two $500 Western Union money orders (totaling $1,000);

   b)   One MacBook Pro laptop computer, bearing serial number C02N6HRWG3QH;

   c)   One HP laptop computer, bearing serial number CND040YVT;

   d)   One silver iPhone, bearing IMEI number 354385064825513;

e)   One 9mm handgun magazine loaded with 15 rounds of live ammunition;

f)   One 4GB silver thumb drive, bearing serial number BBH140724584B; and

g)   One black PlayStation PS 4, bearing serial number C02N6HRWG3QH.

12.   Defendant knowingly and voluntarily agrees to waive any claim or defense Defendant may have under the Eighth Amendment to the United States Constitution, including any claim of excessive fine or penalty with respect to the forfeited assets.

13.   Defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford Defendant the right to appeal the sentence imposed in this case.  Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, Defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing.  Defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291.  However, if the United States appeals Defendant's sentence pursuant to Sections 3742(b) and 1291, Defendant shall be released from the above waiver of appellate rights.  By signing this agreement, Defendant acknowledges that Defendant has discussed the appeal waiver set forth in this agreement with Defendant's attorney.

14.     This Office and Defendant stipulate to and agree not to contest the following facts, and stipulate that such facts, in accordance with Rule 11(b)(3) of the Federal Rules of Criminal Procedure, provide a sufficient factual basis for the plea of guilty in this case:

a.  During the course of an investigation into State of Ohio income tax fraud and State of Florida Unemployment Insurance fraud, law enforcement determined that approximately forty-six fraudulent State of Ohio tax returns were filed from approximately July 30, 2014 through August 24, 2014, using the Internet assigned to Defendant's home.   Defendant's home is located at 2641 SW 83 Ave, Miramar, Florida 33025, in the Southern District of Florida.   Each of these returns was filed online using the personal identifying information — including the name, social security number, and date of birth ("PII") — of a real person.   Approximately $399,226 in fraudulent State of Ohio refunds was requested, but each refund was flagged as fraudulent before it was paid.

b.  Further investigation revealed that several of the individuals whose PII was used to file State of Ohio tax returns via the Internet at Defendant's home were deceased when such returns were filed.   For example, on July 30, 2014, a fraudulent return was electronically filed from Defendant's home in the name and social security number of "Y.D.," requesting a refund for $8,378.   Y.D. died on July 30, 2008.   A fraudulent return was electronically filed from Defendant's home in the name and social security number of "Y.B." on August 1, 2014, requesting a refund for $8,319.   Y.B. died on April 11, 2011.   A fraudulent return was electronically filed from Defendant's home in the name and social security number of "Y.C." on

7

August 1, 2014, requesting a refund for $7,659.   Y.C. died on March 12, 2011.   A fraudulent return was electronically filed from Defendant's home in the name and social security number of "C.H." on August 24, 2014, requesting a refund for $8.685.   C.H. died on January 12, 2011.   As such, none of these individuals authorized Defendant or anyone else to file these tax returns.

c.   The Internet assigned to Defendant's home was also used to access the Florida Unemployment Insurance claims of approximately 147 different individuals from approximately July 21, 2014 through December 18, 2014.   Each of these claims was accessed online using real individuals' names, dates of birth, and social security numbers.   Approximately $28,493 in fraudulent Florida Unemployment Insurance claims was paid as a result of 44 claims filed from Defendant's home.

d.   On March 2, 2015, law enforcement sought and obtained a federal search warrant for Defendant's home.   The search warrant was executed on March 3, 2015. Inside Defendant's bedroom, together with Defendant's personal items, law enforcement discovered various pieces of handwritten and printed papers reflecting the PII of approximately 30 individuals who did not appear to live at the residence. Additionally, law enforcement discovered two $500 Western Union money orders, a 9mm firearm magazine loaded with fifteen rounds of live ammunition, and several electronic devices.   PII was not discovered in any other room in the residence.

  e. The amount of actual, probable, or intended loss resulting from Defendant's offense is $479,219, which results from adding $399,226 in intended Ohio tax fraud with $79,993 in intended Florida unemployment insurance fraud.

  f. A total of 193 individuals' personal information was used as a result of Defendant's offense.

15. Defendant agrees that the above-styled factual basis is true and correct to the best of Defendant's knowledge. Because the factual basis set forth above has the limited purpose of supporting Defendant's guilty plea to the charges discussed in paragraph 2, the factual basis set forth above does not purport to represent all facts and circumstances relating to Defendant's participation. Similarly, the factual basis contained above is not intended to identify all knowledge Defendant might have of the unlawful activity of other individuals.

16. In the event that, for any reason, Defendant does not plead guilty or otherwise fully comply with any of the provisions of this plea agreement, Defendant understands and agrees that Defendant thereby waives any protection afforded by Section 1B1.8(a) of the Sentencing Guidelines, Rule 410 of the Federal Rules of Evidence, and Rule 11(f) of the Federal Rules of Criminal Procedure. Defendant further understands and agrees that if, for any reason, Defendant does not plead guilty pursuant to this plea agreement, any statements made by Defendant under this plea agreement, as part of any pre-plea agreement proffers or debriefings, or as part of any attempted or actual cooperation with the Office or any federal law enforcement agency will be admissible against Defendant without any limitation in any civil, criminal, or administrative proceeding.

17.     Defendant agrees that he has consulted with his attorney and fully understands all rights with respect to the information. Further, Defendant agrees he has been advised concerning, and fully understands, all rights with respect to the provisions of the Sentencing Guidelines, which may apply in this case.  Defendant, by his signature affixed below, attests he has read this agreement, carefully reviewed every part of it with his attorney, is satisfied with his attorney's advice and representations regarding his decision to enter into the Agreement, and voluntarily agrees to be bound by every term and condition set forth herein.

18.     This is the entire agreement and understanding between this Office and Defendant. There are no other agreements, promises, representations, or understandings.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: 10/8/15                By: _____
                                 JAMIE R. GALVIN
                                 ASSISTANT UNITED STATES ATTORNEY

Date: 10/8/15                By: _____
                                 SEAN MARCUS
                                 ATTORNEY FOR DEFENDANT

Date: 10/8/15                By: _____
                                 AARON DOMINICK BARR
                                 DEFENDANT

10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-60147-CR-HURLEY

UNITED STATES OF AMERICA,

v.

AARON DOMINICK BARR,

      Defendant.

_____/

## FACTUAL PROFFER

The United States and the defendant, Aaron Dominick Barr ("Defendant"), agree that, at trial, the United States would have proven the following facts beyond a reasonable doubt:

During the course of an investigation into State of Ohio income tax fraud and State of Florida Unemployment Insurance fraud, law enforcement determined that approximately forty-six fraudulent State of Ohio tax returns were filed from approximately July 30, 2014 through August 24, 2014, using the Internet assigned to Defendant at Defendant's home. Defendant's home is located at 2641 SW 83 Ave, Miramar, Florida 33025, in the Southern District of Florida. Each of these returns was filed online using the personal identifying information — including the name, social security number, and date of birth ("PII") — of a real person. Approximately $399,226 in fraudulent State of Ohio refunds was requested, but each refund was flagged as fraudulent before it was paid.

Further investigation revealed that several of the individuals whose PII was used to file State of Ohio tax returns via the Internet at Defendant's home were deceased when such returns were filed. For example, on July 30, 2014, a fraudulent return was electronically filed from Defendant's home in the name and social security number of "Y.D.," requesting a refund for

$8,378.   Y.D. died on July 30, 2008.   A fraudulent return was electronically filed from Defendant's home in the name and social security number of "Y.B." on August 1, 2014, requesting a refund for $8,319.   Y.B. died on April 11, 2011.   A fraudulent return was electronically filed from Defendant's home in the name and social security number of "Y.C." on August 1, 2014, requesting a refund for $7,659.   Y.C. died on March 12, 2011.   A fraudulent return was electronically filed from Defendant's home in the name and social security number of "C.H." on August 24, 2014, requesting a refund for $8.685.   C.H. died on January 12, 2011.   As such, none of these individuals authorized Defendant or anyone else to file these tax returns.

The Internet assigned to Defendant's home was also used to access the Florida Unemployment Insurance claims of approximately 147 different individuals from approximately July 21, 2014 through December 18, 2014.   Each of these claims was accessed online using real individuals' names, dates of birth, and social security numbers.   Approximately $28,493 in fraudulent Florida Unemployment Insurance claims was paid as a result of 44 claims filed from Defendant's home.

On March 2, 2015, law enforcement sought and obtained a federal search warrant for Defendant's home.   The search warrant was executed on March 3, 2015.   Inside Defendant's bedroom, together with Defendant's personal items, law enforcement discovered various pieces of handwritten and printed papers reflecting the PII of approximately 30 individuals who did not appear to live at the residence.   Additionally, law enforcement discovered two $500 Western Union money orders, a 9mm firearm magazine loaded with fifteen rounds of live ammunition, and several electronic devices.   PII was not discovered in any other room in the residence.

2

The amount of actual, probable, or intended loss resulting from Defendant's offense is $479,219, which results from adding $399,226 in intended Ohio tax fraud with $79,993 in intended Florida unemployment insurance fraud.   A total of 193 individuals' personal information was used as a result of Defendant's offense.   The restitution applicable to Defendant's offense is $28,493.

WIFREDO A. FERRER
UNITED STATES ATTORNEY

Date: _10/8/15_          By: _____
                             JAMIE GALVIN
                             ASSISTANT UNITED STATES ATTORNEY

Date: _10/8/15_          By: _____
                             SEAN MARCUS
                             ATTORNEY FOR DEFENDANT

Date: _10|8|15_          By: _____
                             AARON DOMINICK BARR
                             DEFENDANT

3