UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CR-60147-DTKH

UNITED STATES OF AMERICA,

        Plaintiff,                              Judge: Hon. Daniel T.K. Hurley

vs.

AARON DOMINICK BARR,

        Defendant.
_____/

SENTENCING MEMORANDUM

The Defendant, AARON BARR, by and through the undersigned counsel, respectfully requests that this Honorable Court grant a downward variance from the recommended guidelines, and impose a sentence of 25 months, followed by a period of supervised release with special conditions to include restitution, as well as a requirement that Mr. Barr complete community service hours as part of his rehabilitation. Such a sentence is reasonable in light of *Gall v. United States*, 552 U.S. 38 (2007), *Kimbrough v. United States*, 552 US 85 (2007), and the sentencing factors set forth in 18 U.S.C. § 3553(a). As grounds therefore, the defendant would show:

    **I.**    **Sentencing Factors under 18 U.S.C. § 3553(a)**

As this Court is aware, the Federal Sentencing Guidelines are not mandatory. *United States v. Booker*, 543 U.S. 220 (2005). Subsequent to *Booker* and

1

its progeny, *U.S. v. McBride*, 511 F. 3d 1293 (11th Cir. 2007) made clear that District Courts are only required to give "some weight" to the advisory guidelines, as there are other factors delineated in 18 U.S.C. § 3553(a) that the sentencing court should consider; moreover, the court held that the court "must then impose a reasonable sentence in light of the factors enumerated in 18 U.S.C. § 3553(a)." *McBride*, 511 F. 3d at 1297. Those factors to be considered are:

> "(1) The nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense, (b) to afford adequate deterrence to criminal conduct, (c) to protect the public from further crimes of the defendant, and (d) to provide the defendant with needed [treatment]; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range…; (5) any pertinent policy statement…; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."

18 U.S.C. §3553(a).

Since *Booker*, the Supreme Court of the United States has repeatedly stated that "our cases do not allow a sentencing court to presume that a sentence within the

applicable Guidelines range is reasonable. In *Rita*, we said as much, in fairly explicit terms: "We repeat that the presumption before us is an appellate court presumption. The sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply."" *Nelson v. United States,* 555 U.S. 350, 352 (2009).  Rather, the Court must determine the guideline range, and may decide that the guideline sentence,

> "should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual guidelines to apply, U.S.S.G §5K2.0, perhaps because the Guidelines sentence itself fails to properly reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless, see Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure."

*Rita v. United States*, 551 U.S. 338, 351 (2007); *see also*, *Id.* at 367 (Stevens, J., Concurring) ("I trust that those judges who had treated the Guidelines virtually mandatory during the post-*Booker* period will now recognize that the Guidelines are truly advisory."). The Supreme Court of the United States as well as the Courts of Appeal have repeatedly reaffirmed that the guidelines are one factor of many which the Court should consider, and that there are "many instances where the Guidelines

range will not yield a reasonable sentence." *United States v. Hunt*, 459 F. 3d 1180, 1184 (11th Cir. 2006).

Of particular importance to this Court is that the Eleventh Circuit has repeatedly affirmed below guideline sentences after *Booker,* where the sentencing court varied from the advisory guidelines due to the factors in 18 U.S.C. §3553. *See United States v. Anderson*, 267 Fed. Appx. 847 (11th Cir. 2008)(affirming a sentence of home confinement followed by probation for defendant convicted of insider trading, where Guidelines dictated a sentence of 18-24 months, and the Government recommended 18 months. The Court of Appeals upheld the sentence because, under the 3553(a) factors, consideration of restitution, the defendant's prompt settlement of the case, as well as his job loss, diminished income, his age (50), and his support of college-aged children were all relevant to determining an appropriate sentence.); *United States v. Clay*, 483 F. 3d 739 (11th Cir. 2007) (finding sentence of 60 months, even where guidelines dictated a sentence of 188-235 months, was appropriate where the court considered post-offense contrition, rehabilitation, and risk to the community.); *United States v. Mathis*, 186 Fed. Appx. 971 (unpublished) (11th Cir. 2006) (variance of 50% from the top end of Guidelines affirmed for Hobbs Act extortion and obstruction case affirmed based on 3553 factors, where the court found the guideline range to be "excessively punitive", the defendant had a lack of prior criminal history, and had a history of public service.); *United States v. Winingear*,

422 F.3d 1241, 1246 (11th Cir. 2005) (rejecting government challenge to sentence one-tenth the length of the twenty-year maximum because sentence reasonable in light of 3553 factors); *United States v. Williams*, 435 F.3d 1350, 1354 (11th Cir. 2006) (rejecting government challenge to 90 month sentence which was less than half the lowest sentence within the applicable guidelines range of 188 to 235 months as reasonable in light of 3553 factors); *United States v. Halsema*, 180 Fed. Appx. 103 (unpublished) (11th Cir. 2006) (rejecting government challenge to sentence of 24 months, finding it to be reasonable considering the 3553 factors, for defendant charged with possession of child pornography, where his Guidelines score was 57-71 months).

In the case *sub judice*, the Defendant has plead guilty to one count of Use of an Unauthorized Access Device, a violation of 18 U.S.C. § 1029(a)(2), and Aggravated Identity Theft, a violation of 18 U.S.C. § 1028A(a)(1). In light of the intended loss amount, and acceptance of responsibility, the Presentence Investigation Report (hereinafter, "PSI") should determine that the final total offense level is a level 17. With no prior criminal history, this would result in a range of 24-30 months in prison, followed by a mandatory minimum sentence of 24 months to be served consecutive to any other confinement. In fashioning the appropriate sentence, Mr. Barr respectfully requests this honorable Court to consider the following factors under section 3553(a).

    **a.** <u>Nature and Circumstances of Offense and Characteristics of the Defendant.</u>

Mr. Barr was involved in this crime from approximately July 2014 through August 2014 at the time the Government Officials executed a search warrant on Mr. Barr's home (where he lived with his mother and step-father). Following the execution of the warrant, Mr. Barr immediately conveyed to authorities that he wished to cooperate in the investigation into his own wrongdoing. After hiring the undersigned as counsel, Mr. Barr indicated to the Government that he would be willing to waive indictment and enter a plea agreement almost immediately, and long before any work had to be completed by the Government.

Mr. Barr is a 21 year old young man who has lived with his family since childhood. Contrary to the language of the PSI, Mr. Barr was not "raised by a single mother." Rather, Mr. Barr spent much of his childhood with both his mother and his father – before his father was murdered – often sleeping at his father's home and spending quality time with him. While his parents were not married, he was raised by both of his parents prior to his father's murder and he was a good child throughout his childhood. Following his father's death, Mr. Barr continued on with his education, eventually earning his High School degree from Dr. Michael Krop Senior High School. After his graduation, Mr. Barr first enrolled in McFatter Technical College – a prerequisite for becoming an EMT – and later enrolled in Coral Springs

6

Fire Academy, with the intention of becoming an Emergency Medical Technician (EMT). Unfortunately, because of his involvement in this case, he was kicked out of the academy. However, his pursuit of further education and bettering himself should be considered by the court as a factor indicating that Mr. Barr is not a run of the mill defendant, but somebody who was trying to better himself, and who fell into unfortunate circumstances following his father's murder.

Additionally, the Court should know that Mr. Barr became involved in this crime in the first place after becoming involved with a group of much older, and much more dangerous individuals who are currently involved in committing similar (and more dangerous) crimes in the North Miami area. As previously explained to AUSA Galvin, Mr. Barr gravitated towards these older gentlemen following his father's murder and later in high school, as they tended to act as father figures for him after his father had been murdered. While this does not excuse the conduct which took place here, the undersigned believes it is important to understand that Mr. Barr lived a mostly law abiding life outside of his involvement with these individuals, both prior to, and after his involvement in this crime. Moreover, because of the dangerous nature of these individuals, and Mr. Barr's fear for the safety of both himself as well as his family, he could not provide cooperation to the government in

this case which might normally result in a reduction in sentence pursuant to Rule 5K1.1, Federal Sentencing Guidelines[1].

### b. Rehabilitation, Deterrence, and Likelihood of Recidivism

Mr. Barr has pled guilty to the above-mentioned crimes. He recognizes and concedes that this is not only a very serious crime, but that he is sorry for his involvement in such a serious offense. Mr. Barr has been racked by guilt over this incident, and his involvement in this incident. This is part of the reason that Mr. Barr was diagnosed with depression. Moreover, as a result of his involvement in this matter, and because of the dangerous individuals (who are also involved in committing this crime) whom he fears may come after him and his family, he continues to suffer from anxiety attacks relating to his involvement in this matter. (PSI, ¶ 41). While he has been provided medication to cure this by his doctor, Mr. Barr continues to suffer grief and regret for getting himself and his family involved in such a serious crime.

Under the 18 U.S.C. § 3553(a) factors, likelihood of recidivism is also a factor to be considered by the court. As explained in the PSI, Mr. Barr has zero criminal history points, and has never been convicted of any crimes as an adult. As explained by the United States Sentencing Commission's report "Measuring Recidivism", the criminal history score is used as a tool to measure offender culpability, to deter

---

[1] As has been previously explained to AUSA Galvin, Mr. Barr has already been subjected to death threats due to his involvement with both these individuals, and this crime in particular.

criminal conduct, and to protect the public from further crimes of the defendant. "Measuring Recidivism", United States Sentencing Commission, p. 3. *See also*, U.S.S.G., Chapter 4, Pt. A, Intro Comment. Under the Commission's own rules and commentary, Mr. Barr's criminal history level of zero would be sufficient by itself to demonstrate a significant unlikelihood of recidivism and danger to the community. Moreover, under the Commission's report, the criminal history points "represent the purest form in which the guidelines measure recidivism risk," and that a criminal history reflecting zero points has the lowest likelihood of recidivism at 11.8% amongst offenders. "Measuring Recidivism", United States Sentencing Commission, p. 23, Exhibit 4. Knowing this, the Court should also consider that pursuant to the Commission's report, those who are sentenced to prison with alternatives, have the lowest recidivism rate (12.1) and those who serve a sentence of 24-59 months have a recidivism rate lower than those who serve a sentence between 6-23 months and those who serve a sentence greater than 60 months. "Measuring Recidivism", United States Sentencing Commission, p. 31, Exhibit 12. Though the court must impose a 24 month sentence of imprisonment (due to the mandatory minimum of 24 months prison associated with Count 2A), a reasonable sentence should consider both the guilt and rehabilitation factors, as well as the likelihood of recidivism, in coming to the decision to impose a downward variance so that the defendant is not sentenced to

a greater sentence than is warranted by the facts of the case and the Defendant's prior criminal history.

## II. The Requested Sentence is Sufficient, but not Greater than Necessary to Comply with the §3553(a) Factors.

A term of imprisonment of 25 months, followed by three years of probation, is consistent with the sentencing factors delineated in 18 U.S.C. § 3553(a), and is both reasonable, and not greater than is necessary to achieve a fair and just sentence in the instant case. In fact, the courts have generally agreed that the imposition of even a probation sentence may be warranted as variances for first-time, non-violent offenders who are unlikely to re-offend and make amends to demonstrate their remorse and make amends with society. *United States v. Tomko*, 562 F.3d 558 (3rd Cir. 2009) (district court did not abuse its discretion in sentencing defendant to probation with a year of home detention, community service, restitution, and a fine for tax evasion rather than a term of imprisonment where the guideline range was 12-18 months, in part because of the defendant's negligible criminal history, employment record, and community ties); *United States v. Rowan*, 530 F. 3d 379 (5th Cir. 2008) (where defendant convicted of possession of child pornography and guidelines were 46 to 57 months, sentence of five years supervised release not unreasonable under 3553(a) factors, and *Gall*); *United States v. Bueno*, 549 F. 3d 1176 (8th Cir. 2008) (where the defendant possessed more than 70 kilograms of

cocaine, and guidelines were 108-135 months, sentence of probation with house arrest for five years not unreasonable noting that "offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty."); *United States v. Whitehead*, 532 F.3d 991 (9th Cir. 2008) (district court did not abuse its discretion when it sentenced the defendant to probation with "substantial amount of community service and house arrest" where the defendant was convicted of supplying counterfeit access cards causing a loss of $1 million and guidelines range was 41-51 months).

Despite the bevy of cases which hold that even a probationary sentence might be reasonable here (but for the mandatory consecutive sentence), in considering the actual loss, the Defendant's family history, as well as lack of criminal history, a sentence of 25 months imprisonment, followed by three years of probation adequately ensures deterrence from future criminal conduct, promotes respect for the law, but also takes into consideration the defendant's efforts to better educate himself (by obtaining further education and trying to obtain his EMT certificate), his desire to quickly and efficiently make amends to the government and accept responsibility for his actions, as well as his lack of prior criminal history, and the fact that he is first time offender to a non-violent offense.

### III. Miscellaneous Sentencing Considerations

The sentencing guidelines, and the extant case law, also outline a number other circumstances a court may consider in its decision to grant a downward variance, including but not limited to: (a) the defendant's otherwise outstanding character; (b) early death of parents, and (c) the defendant's age. *See* Character Letters, filed as an addendum to this motion. *See also*, *United States v. Wachowiak*, 496 F.3d 744 (7th Cir. 2007) (affirming district court's imposition of 70 month sentence for defendant convicted of receipt of child pornography, where Guidelines range was 121 to 151 months, in part because record demonstrated defendant was a kind, caring individual, who enjoyed broad support of family, friends, colleagues, and teachers…as depicted in the many supportive letters); *United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (upholding sentence of one year and one day as reasonable for defendant convicted of possession with intent to distribute 100 grams of heroin with a guideline range of 46-57 months where the district court determined that the guideline range was greater than necessary to meet the goals of 3553(a), and focused on the defendant's personal history and characteristics, including the community support, lack of criminal record, and low recidivism risk.); *United States v. Lamb*, 214 Fed. Appx. 908 (11th Cir. 2007) (affirming sentence of 181 months for drug and firearm offenses despite guidelines minimum of 420 months, in light of the defendant's employment with Humane society).

Mr. Barr is no different than the defendants in *Wachowiak*, *Munoz-Nava*, or *Lamb*. He readily admits and accepts responsibility for his actions. Moreover, like those defendants, his family history (including his father's murder) and his lack of criminal history, combined with his low likelihood of recidivism all are relevant to determining whether a downward variance is appropriate in order to ensure that the punishment Mr. Barr is given is sufficient, but not greater than that which is necessary. As such, Mr. Barr respectfully requests that this court grant the downward variance to a sentence of 25 months, followed by 3 years of probation.

### IV.    Conclusion

Mr. Barr respectfully submits that having considered all of the foregoing factors and circumstances of the offense, and the history and characteristics of the defendant a downward variance is justified on the unique facts and circumstances applicable to his case. Mr. Barr respectfully request this court to impose a sentence involving prison that would accomplish the goals of promoting respect for the law and general deterrence, while not being overly harsh, in light of the policy considerations and goals delineated in 18 U.S.C. § 3553(a). He is requesting that any sentence be reasonable, and no greater than is necessary so that he may pay his debt to society, while still working to rehabilitate himself and demonstrate his remorse; additionally, he is requesting this court to recommend to the Bureau of Prisons that

Mr. Barr be housed at a facility as close to South Florida as possible so that he may still have contact with his mother and other members of his family.

Mr. Barr wishes to thank this Court for considering this Sentencing Memorandum and request that the court consider all of the factors, and letters, submitted on his behalf. The undersigned will have further remarks at the time of sentencing.

Respectfully submitted,

By: /s/ *Sean T. Marcus*
SEAN T. MARCUS, Esquire
Glantzlaw
7951 S.W. Sixth Street, Suite 200
Plantation, Florida 33324
Telephone No.: (954) 424-1200
Fax No.: (954) 424-4091
Florida Bar No.: 56289
smarcus@glantzlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 6, 2016, the undersigned attorney electronically filed the foregoing "SENTENCING MEMORANDUM" with the Clerk of the Court using CM/ECF and forwarded a true and correct copy of this SENTENCING MEMORANDUM to AUSA Jamie Galvin, United States Attorney's Office, 99 NE 4 Street, 4th floor, Miami, FL 33132 via e-service.

By: /s/ *Sean T. Marcus*
SEAN T. MARCUS, Esquire

                                  Glantzlaw  
                                  7951 S.W. Sixth Street, Suite 200  
                                  Plantation, Florida 33324  
                                  Telephone No.: (954) 424-1200  
                                  Fax No.: (954) 424-4091  
                                  Florida Bar No.: 56289  
                                  smarcus@glantzlaw.com